Good morning. I'm Judge Gould, and I'll be presiding today. On my right is Judge Wynn, and on my left is our visiting judge, Judge Presnell, who deserves a special note of thanks for volunteering time from his busy trial docket in the Middle District of Florida to come here and help us out. So we appreciate it, Judge Presnell. Thank you, Judge. We have several cases that have been submitted on the briefs, and I'll just mention them first, then we'll start. First, we have the Anglin case v. Merchant's Credit. It's No. 18-35906. That's submitted on the briefs. And then we have Fletcher v. Saul, No. 18-35949, also submitted on briefs. And then we have Aham. I hope I'm pronouncing that right. Aham. Did I mention Jarrett? Okay. Jarrett v. Saul is on the briefs, too. Okay, that's 18-36025. And now the case for argument is Ahmad Faham v. Barr. And for the appellant... Good morning to the Court. Thank you for having me here to argue on behalf of my client. And thank you, Judge Presnell, for being here all the way from Florida. My client, Ahmad Faham, is a stateless Palestinian who is subject to an order of removal. Before the BIA, they determined that he was ineligible for all of his requested applications for relief based on a 1982 conviction for unauthorized distribution of psilocybin under Section 22-42-2 of the South Dakota codified laws. Based on that conviction, he was allegedly sentenced to five years' imprisonment at hard labor. That sentence was suspended based on the conditions that he demean himself as a law-abiding citizen, pay restitution in the amount of $275, and that he leave the United States within 14 days for a period of at least 18 months. Now, we've argued in our briefs that the BIA's decision and their treatment of this alleged conviction was erroneous in several different regards. And based on the questions set forth for supplemental briefing, I do understand that the Court is very interested in the application of the categorical or modified categorical approaches in evaluating this conviction. But I would like to briefly go into our arguments, our first two arguments in the briefing, which is that the conviction should not be considered as valid for immigration purposes, and that if the conviction is valid, that the five years' imprisonment at hard labor should not be considered as valid for immigration purposes. Now, under Ninth Circuit precedent, going back to 1972, in the case Deer Wing Jung v. U.S., which is 312 F. 2nd, page 73, the Ninth Circuit determined that a sentence in a state court that orders somebody to leave the United States is either a due process violation or a form of cruel and unusual punishment. And so it's undisputed in this case that that provision of the sentence is illegal under applicable law. Counsel, if we determined that the 2001 amendment was not a clarification, but rather than a change in the law, then what are we left with? Do you have any remaining arguments at that point? The 2001 amendment to the law regarding, this is regarding, yeah, well, yes, that's really one small part of our arguments. The 2001 amendment is about whether somebody can be convicted of possession based on having a metabolism, a metabolism of a drug in their bloodstream. That's what you're referring to, correct? Right. The 2001 amendment to the statute of conviction, S.D.C.L. section 22-42-2. Correct. And if we determine that that's not a clarification of the law, but rather a change in the law, what arguments are you left with? Well, we're still arguing that the conviction itself should not be considered as valid for immigration purposes based on the illegal provision of the sentence that he leave the United States. We're also arguing that the sentence of five years' imprisonment at hard labor should not be considered as valid, because this is, it's basically an illusory sentence, which was imposed only in order to try to make him leave the country. It wasn't, they never sought to impose it. And although the provision that says he has to leave the country was stricken based on a later application for post-conviction relief, our argument is that just striking the provision doesn't, it doesn't cure the illegal aspect of the sentence as a whole. In Deer Wing Chung, they specifically, the court specifically considered a conditional sentence where someone had a choice between either one sentence or leaving the country. And the court was very clear that the entire sentence should be viewed as illegal based on the provision that says, that orders them to leave the country, and that it's not enough to simply give someone a choice in order to leave the country. It's not enough to, in order to render a sentence of that nature to be legal. Here you successfully, clearly attacked the unconstitutional nature of that sentence, did you not? It's correct that the particular provision was stricken, but our position is that simply striking the position doesn't cure the sentence, because of the conditional nature of the sentence. The fact that he, that he was ordered to leave the country was as an alternative to the five years imprisonment at hard labor. And so if, once you strike that provision, what you're left with is that in exchange for, for suspending the five years imprisonment at hard labor sentence, all he was required to do was pay $275 and demean himself as a law-abiding citizen. So in, in, in that, in that context, it shows that this five years imprisonment at hard labor was not a real, it was not a real sentence. It was not actually, it was not actually imposed on him. They never sought to, they never sought to imprison him. The counsel is, is it your position that therefore the illegal sentence vitiates the conviction? Yes, Judge. That is what, that is our first argument in this case, is that the, the illegal sentence renders the conviction invalid for immigration purposes. The second argument is that even if the conviction itself is valid for immigration purposes, the, the, the five years imprisonment at hard labor sentence, which is just the opposite side of the coin, being of this, of this condition, of, of the, of the provision telling him to leave the country, is invalid for immigration purposes. Now, moving past that, assuming that the conviction is valid, we still argue that the, that the conviction is not a controlled substance conviction under the categorical approach. The, the government has, has acknowledged that the statute of conviction is overbroad compared to the, to the Federal law because at the time, in 1982, it included various substances that were not included on the Federal, on the Federal, Federal schedules. So the, the BIA determined that this is a, that this is a divisible, that, that the statute of conviction is divisible with regards to the, the particular type of, of controlled substance, which would mean that the specific controlled substance is an element of the conviction. Now, Mr. Morera, by the way, am I pronouncing that right? Yes. Morera, Morera. Mr. Morera. Thank you. I want to also say that I neglected to thank you and Mr. Williams for traveling so far for hearing today, which we appreciate. But also, Judge Presnell, I thought, was perhaps about to ask a question when I . . . No, go ahead. I was just looking at my notes. Thanks, Judge. Okay. Go ahead. Okay. So our argument that, that this statute of conviction is not divisible with regards to the specific, the specific substance is based on South, a South Dakota Supreme Court case, which is, I'm sorry, which is State v. Overbay. And this is a case that shows that you can be charged with a generalized, a generalized charge of, a generalized controlled substance charge where they don't yet know what the substance is. And that was a case where police arrested and charged somebody based on a white powdery substance and based on scales and baggies. And it was not until subsequent laboratory analysis that it was determined to be methamphetamine. That's State v. Overbay, 790 Northwest 2nd at page 35. That's a 2010 case from South Dakota. So our argument under the categorical approach, which the Ninth Circuit lays out when, when, when it's, when, when it's actually appropriate to use the categorical approach in the case Sandoval v. Sessions. That's 866 Federal 3rd, page 986. And at 993 is where they explain that you first look to the statute and then you, if that doesn't speak to it, then you look to the case law. And if you still can't tell if it's a divisible statute, then you could look at Shepherd documents to determine whether the specific, the specific substance was actually an element. And if these documents fail to speak plainly, then the modified categorical approach has no application, which would mean that as this, as this, that as the statute itself is overbroad, it does not constitute a controlled substance offense categorically. Do all of your arguments regarding overbreath depending, dependent on the conclusion that the 2001 amendment was a clarification rather than a change in the law? No, Your Honor. That's, that's, that's not the only argument we have regarding overbreath. That's, that's one of, that's one of the arguments. The other argument is that the, is regarding the schedules, that the schedule itself, as acknowledged by, by government counsel in South Dakota in 1982 included substances that were not on the federal schedule, which means that the, the statute itself providing for, for, for, that defines which, which substances are illegal is overbroad compared to the federal schedules. Now, there was an alternative argument saying that even if, even if he was specifically convicted of psilocybin as an element, that the, the definition of psilocybin itself under South Dakota law is overbroad because you can be convicted for, for having psilocybin based on the presence of metabolites in your blood. And now, this is a, this is a... But, excuse me, counsel, that was only true after the amendment that Judge Wynn is referring to, correct? That, it's true that it was only part of the statute, it was only officially, it was only explicitly set forth in the statute after the 2001 amendment. But the, the Supreme Court of South Dakota in State v. Schrader in 2004, a few years after the, the statutory amendment, they did say, or they did point out to case law previously where the law was applied in, in that way, where, in the way that it, that it, in, in the way that it is after the amendment. So, regarding realistic probability, even though the, the State Supreme Court, they said in State v. Schrader that they, that they had declined to previously decide the issue, they did point to several cases that preexisted the statutory amendment, but where the later, the later version of the law, it was, it was applied in that way as, as it was after the statutory amendment. Counsel, if you want rebuttal time, I see. I would like to, I would like to take the rest of the time. I'll add you, I'll give you an extra minute for rebuttal, because I took up some of your time in the middle, but.  Good morning. John Williams on behalf of the government. At the heart of this immigration case is a legal question. Does petitioner's 1982 conviction under South Dakota codified law, section 2242-2, constitute a controlled substance offense, an aggravated felony drug trafficking offense as defined by the Controlled Substance Act and the INA? The government contends that the answer is yes. Under this court's categorical and modified categorical analysis, the predicate crime under South Dakota section 2242-2 is a categorical match to 21 U.S.C. section 841 A1 and 2. Although the substance, the drug schedule under South Dakota 2242-2 is overbroad as to the drug type, the list of the drugs under the South Dakota drug schedule is divisible. And those drugs, the drug is an element and such is divisible and the divisibility is supported by the cases that we've listed in our supplemental and our main brief. As to the questions that the court raised with regard to our supplemental briefing, the government contends that both controlled substance and the term distribute contribute to 22, section 2242-2, the South Dakota statute, as being overbroad because they list additional drugs. But those drugs are, again, they're divisible because they are elements. And the specific drug in this case, psilocybin, is a drug that is found and listed under the federal drug schedule. We've listed a number of the divisibility cases, including Berkman, State v. Berkman, State v. Fox, State v. Roeder, and even one that the petitioner has used, Sundrill. All four of those cases go through and elaborate on the divisibility of the drug schedule for South Dakota's drug schedule and confirm that the drugs are an element. What is your take on the 2001 amendment? Was it new law or was it clarification of old South Dakota law? That it was new law. As we look at... Based on the Schroeder case. Based on the Schroeder case. And the specific language throughout the Schroeder case. For example, stating that it was an amendment to the 1982 law. That it identified title of bill and act to include in certain drug offenses the altered state. It went on and identified language stating that it is reasonable to infer that the legislature was responding to questions raised in prior cases regarding the issue of possession of a drug in the body. So the government believes that it was a change to the law and it created a second way for prosecutors to establish possession of a particular drug. Also in State v. Whistler, in that case, the South Dakota court acknowledged that the 2001 amendment, as I just indicated, created two potential ways in which possession occurred as to a particular drug. Looking at the analysis that was made by the board with that regard, the government believes that it was harmless error that the board had indicated that it was a clarification rather than an amendment. This is a conviction and very plain and clear. And under the federal INA, which establishes that the term conviction means that the alien entered a plea and he was ordered... There was some form of punishment. It meets the statutory definition for conviction. The cases with regard that were listed and identified by Petitioner, Overbay, Blakely, and Hanson, the government... So as to the analysis in this case, the government believes that it is very clear that in this matter the Petitioner pled to a specific crime that constituted and fit categorically a match with a federal crime. If there are no questions, I will surmise in this if there are no questions. So I have a question if I may ask, please. What is the government's response to the appellant's argument that the illegal sentence on the conviction renders the conviction a nullity or a void? The government contends that that is not the case. Here you have a state court. First, the Petitioner pled to this conviction. There was no trial. He pled to it. The state court of South Dakota then reviewed that sentence, and they removed the portion that the Petitioner requested, which was that he leave the country. And so what was left of the conviction and sentence the government contends is proper, and it fits and satisfies the definition under the federal statutes. How do you deal with his argument that the five-year sentence was illusory? It was never served, right? Well, it was he was granted a suspended sentence, and so he Well, it was suspended because of the unconstitutional nature of the sentence, right? Well, I don't know that. I don't know that to be sure. The state court upheld the five-year sentence. What they vitiated was the fact that he leave the country, so there's been no record evidence that's been put forward that that sentence was somehow suspended for some other purpose besides the court just granting a suspension of that particular sentence due to the crime. And based on that five years, both the conviction and the sentence of five years, it satisfies all of the laws of the INA such that he's both been convicted of a controlled substance act as well as an aggravated felony. So in conclusion, here the record established that the petitioner had been convicted under a state statute, namely unauthorized distribution of a substance with high potential for abuse, As I indicated earlier, the petitioner pled guilty, and two state courts reviewed and confirmed the conviction. The second state court did vitiate the removal of the portion of the sentence from the United States. The immigration judge then reviewed this case and held that petitioner's conviction was a categorical match to a federal crime. The board then reviewed, albeit they came to their decisions slightly different path, but the board then affirmed the immigration judge's decision and held that the petitioner's conviction was a categorical match. Today, the government asked that this court, too, should hold that petitioner's conviction is a categorical match, that the state conviction is a categorical match with the federal law, and that because of that conviction, the petitioner is not eligible for whatever relief is remaining that he didn't waive or fail to exhaust before this court. So accordingly, the government asked that this court deny the petition for review. Thank you. Thank you, counsel. Your Honors, I'd like to respond specifically to the BIA's decision that the later post-conviction relief vitiated the illegal provision from the sentence and renders the rest of the sentence and the conviction itself to be valid. Now, in making that decision, the BIA, they said it was based on two prior BIA decisions, which is matter of quota and matter of song, which those cases are not analogous to this because they don't include illegal provisions, although the BIA decision suggests that these cases are directly on point. Now, those cases, they say that for immigration purposes, we give full credit where if supposing somebody is convicted and sentenced to 365 days and that gets changed to 360 days. Now, that kind of post-conviction relief doesn't have anything to do with illegal sentences. And being that this is an unpublished decision, the board is not entitled to any particular deference on this matter. It's not like they're actually stating a position. They actually made a fairly clear error by relying on their own case law in a way because their own case law in this case was not analogous and is distinguishable and does not speak to the issue of using post-conviction relief when the sentence itself was illegal at the time that it was issued. And one other thing that I would like to mention is that at the time the BIA made their decision in this case, that since then, there have been some Ninth Circuit cases that are on point regarding the burden of proof. This is a case where the petitioner, when he was before the immigration court, he had the burden of proof in establishing that he was eligible for relief. And insofar as the conviction may be ambiguous either as to whether it renders him ineligible for relief or also on the issue of whether the conviction was divisible, the case law from the Ninth Circuit is clear that if it is ambiguous, that the applicant, in fact, has satisfied his burden of proof in showing that he's not precluded from relief. And that's based on the recent holdings in Sandoval v. Sessions in 2017 and Marina Lorena v. Sessions in 2019. And as I see that I'm running out of time, if there's any more questions or otherwise, I would just thank you for your time. Thank you, Mr. Murra. None from me, Judge Brizdo. No questions. Hearing no questions, we thank you both. I want to again thank both counsel for traveling so far from New York and Washington, D.C. to help educate us on the merits of this case. And we appreciate that the case shall be submitted. We thank both counsel for their excellent arguments.
judges: Gould, Nguyen, Presnell